# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| DENNIS MAURER, an Individual, <br><br> Plaintiff, <br><br> vs. <br><br> PIC-A-LILLI INN, INC., a New Jersey Profit Corporation, <br><br> Defendant. | Case No. 1:23-cv-03186 <br><br> **COMPLAINT** |

## Introduction

Plaintiff, DENNIS MAURER, an individual, on his own behalf and on the behalf of all other similarly situated mobility impaired persons hereby sues the Defendant, PIC-A-LILLI INN, INC., a New Jersey Profit Corporation for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. §12181 et seq. ("ADA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("LAD").

## The Parties

1.  Plaintiff, DENNIS MAURER, is an individual over eighteen years of age and is otherwise sui juris.

2.  Defendant, PIC-A-LILLI INN, INC., owns or operates a place of public accommodation, in this instance a bar and restaurant, alleged by the Plaintiff to be operating in violation of Title III of the ADA and the LAD.

1

## Jurisdiction and Venue

3. Defendant's property, known as the Original Pic-A-Lilli Inn, is a bar and restaurant located at 866 Route 206, Shamong, New Jersey 08088, Burlington County ("Pic-A-Lilli" or the "Property").

4. Venue is properly located in the District of New Jersey because venue lies in the judicial district of the property situs. The Defendant's property is located in and does business within this judicial district.

5. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.[1]

6. Jurisdiction over the state law claim vests with this Court pursuant to 28 U.S.C § 1367.

7. The Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA. The Defendant is thus required to comply with the obligations of the ADA.[2]

8. Plaintiff, DENNIS MAURER, is an individual with disabilities as defined by and pursuant to the ADA. Mr. Maurer has multiple sclerosis and therefore has a physical impairment that substantially limits many of his major life activities[3] including, but not limited to, not being able to walk, stand, reach, or lift. Mr. Maurer, at all times, requires the use of a wheelchair to ambulate.

## Factual Background

9. Mr. Maurer is a staunch advocate of the ADA. Since becoming mobility impaired (and

---

[1] See also 28 U.S.C. § 2201 and 28 U.S.C. § 2202
[2] 28 CFR § 36.201(a) and 28 CFR § 36.104
[3] as defined by 28 CFR § 36.105(b)(1-2)

having to fully rely on the use of his wheelchair to ambulate) he has dedicated his life to the elimination of accessibility discrimination so that he, and others like him, may have full and equal enjoyment of all public accommodations without fear of discrimination and repeated exposure to architectural barriers.

10. Mr. Maurer continues to encounter architectural barriers at many of the places that he visits. Seemingly trivial architectural features such as parking spaces, curb ramps, and door handles are taken for granted by the non-disabled but, when implemented improperly, become arduous and even dangerous.

11. The barriers to access that Mr. Maurer experiences at differing places of public accommodation are often similar in nature. For example, he is repeatedly faced with sloping in parking lots, improper curb ramps, and non-accessible restrooms (even when designated "accessible" or "handicapped"). He has become frustrated and disheartened by the repetitiveness of the complaints he has been forced to make to the employees and management at various establishments in the past, often to no avail. Thus, he now finds his redress through the ADA, as Congress intended.

12. Mr. Maurer has visited the Property on many occasions, his last visits as a patron of the interior of the restaurant occurred on or about February 6, 2023, and on or about May 10, 2023. Mr. Maurer visited the Property as a bone fide patron with the intent to avail himself of the goods and services offered to the public within but found that the Property was littered with violations of the ADA, both in architecture and in policy. Mr. Maurer subsequently returned to the exterior of the Property during the first week of June 2023 – no change in exterior conditions were observed.

13. The Pic-A-Lilli is a destination establishment and a southern New Jersey institution located on a major highway. The restaurant is widely known across the region for its buffalo wings.

Although, Pic-A-Lilli is not the type of restaurant that accepts dining reservations, Mr. Maurer intends to return to Pic-A-Lilli not only as a patron but also to monitor any progress made with to respect to ADA compliance – he sincerely hopes that his return visits are not made in vain nor prevented by existing architectural barriers and improper procedures. His return visits will be dictated by his ongoing, continuous, and nearby travel.

14. Prior to the onset of his disease and his ensuing disability, Mr. Maurer was a licensed thoroughbred horse trainer and assistant horse trainer for over twenty-five years. Horseracing remains his passion; he attends workouts, trainings, sales, and live racing whenever possible.

15. The horse racing venues/farms frequently traveled to by Mr. Maurer include, but are not limited to, the following:

   a. Delaware Park Race Track, located at 777 Delaware Park Blvd, Wilmington, DE 19804.
   b. Harrah's Philadelphia Racetrack, located at 777 Harrah's Blvd, Chester, PA 19013.
   c. Parx Racing, located at 2999 Street Rd, Bensalem, PA 19020.
   d. Penn National Race Course, located at 777 Hollywood Blvd, Grantville, PA 17028.
   e. Monmouth Park, located at 175 Oceanport Ave, Oceanport, NJ 07757.
   f. Saratoga Racecourse, located at 267 Union Ave, Saratoga Springs, NY 12866.
   g. Westampton Farm, a thoroughbred training facility located at 75 Oxmead Rd, Westampton, NJ 08060.

16. Further, Mr. Maurer is an avid baseball fan and a life-long supporter of the Philadelphia Phillies. His normal practice is to attend several games per season.

17. The Property is located on his route to several of the above locations; on Route 206, a major highway which bisects the southern New Jersey region.

18. Finally – as it relates to his ongoing, continuous, and nearby travels – Mr. Maurer has accumulated friends and family across the mid-Atlantic region, including his children, grandchildren, nieces, and nephews; all of whom he visits regularly across New Jersey, New York,

Pennsylvania, Delaware, and Maryland.[4]

19. Mr. Maurer has personally encountered exposure to the architectural barriers and otherwise harmful conditions that exist at the Property; they have endangered his safety and could cause damage to his wheelchair.

20. The ADA has been law for over thirty (30) years and the Property remains non-compliant. Thus, the Plaintiff has actual notice and reasonable grounds to believe that he will continue to be subjected to discrimination by the Defendant.

21. Plaintiff has a realistic, credible, existing, and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to the Property as described but not necessarily limited to the barriers he has personally experienced which are listed in paragraph 26 of this complaint.

22. Following any resolution of this matter Mr. Maurer will ensure that Pic-A-Lilli undertakes the remedial work that is required under the appropriate standard and is compliant with the ADA. This reinspection will occur as set forth in the parties' settlement agreement or as ordered by this Court.

## COUNT I
### Violation of Title III of the
### Americans with Disabilities Act, 42 U.S.C. § 12181, et seq.

23. Plaintiff realleges and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

24. The Defendant has discriminated against the Plaintiff, and other similarly situated mobility

---

[4] Mr. Maurer would prefer not to list his friends or family members in this public document but would do so under seal if ordered by this Court.

impaired persons, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by the ADA.

25. A preliminary inspection of the Property has shown that violations of the ADA exist. That inspection, performed by Plaintiff's expert, further revealed that the remediation of all violations/barriers listed in paragraph 26 are both technically feasible and readily achievable in nature. Plaintiff's expert has based this judgement on personal knowledge of required materials, pricing, labor, and the completion of similar projects in the southern New Jersey geographical region.

26. The following is a list of architectural barriers and ADA violations personally encountered by Mr. Maurer during his many visits to the Pic-A-Lilli Inn:

**<u>Parking and Exterior Accessible Route</u>**

   a. The accessible parking spaces throughout the Property are not maintained, are unidentifiable, contain abrupt changes of level, and fail to lead to an exterior accessible route; all in violation of the ADAAG and Sections 402 and 502 of the 2010 ADA Standards. Unmaintained and loose surfaces throughout the parking lot have presented Mr. Maurer with a tipping hazard which could cause a fall and damage to his wheelchair. The accessible parking area should be resurfaced, restriped, have proper identification signage, and lead to an accessible route to the entrance. The remediation of these barriers is both technically feasible and readily achievable.

   b. Pic-A-Lilli fails to provide the requisite number of compliant accessible parking spaces and van-accessible parking spaces (as well as the requisite number of access aisles and van access aisles), a violation of Section 502 of the 2010 ADA Standards. Due to the lack of

accessible parking spaces Mr. Maurer was forced to park away from the Pic-A-Lilli so that he could freely access his vehicle and not become blocked out due to the lack of access aisles. The remediation of this barrier is both technically feasible and readily achievable.

c. The accessible route at Pic-A-Lilli (which leads from parking area to the restaurant entrance) is impeded by loose surfaces and abrupt changes in level; in violation of the ADAAG and Section 406 of the 2010 ADA Standards. Mr. Maurer was impeded by obstacles while traveling from the parking lot to the restaurant – these conditions present him with a tipping hazard and could cause damage to his wheelchair. The accessible route should be resurfaced and lead directly from compliant accessible parking area to an accessible entrance in order to comply with the ADA; the remediation of these barriers is both technically feasible and readily achievable.

d. The Property fails to provide a compliant route to the adjacent street/sidewalk and/or the public transportation route/bus stop. Mr. Maurer is precluded from accessing the Property from these areas due to the lack of an accessible route; a discriminatory omission which limits his options for transportation; a violation of ADAAG and Section 206.2.1 of the 2010 ADA Standards. Mr. Maurer could not access the restaurant from the street; the remediation of this barrier is both technically feasible and readily achievable.

**Access to Goods and Services**

e. The entering of Pic-A-Lilli is impeded by abrupt changes of level at the threshold and sloping beyond allowable limits at the base of the door; a violation of the ADAAG and Section 402 of the 2010 ADA Standards. These conditions have presented Mr. Maurer with a tipping hazard which could cause a fall and/or damage to the bottom of his wheelchair. He required assistance to enter the restaurant. The remediation of this barrier is both

7

technically feasible and readily achievable.

f. The Pic-A-Lilli fails to provide the requisite number of accessible dining tables; violating the ADAAG and Section 902 of the 2010 ADA Standards. Due to the lack of accessible tables Mr. Maurer could not dine in a comfortable manner. The remediation of this barrier is both technically feasible and readily achievable.

g. Payment counters are mounted beyond the allowable limits and outside of Mr. Maurer's reach range; a violation of the ADAAG and Sections 308 and 904 of the 2010 ADA Standards. Mr. Maurer could not make use of the payment counters; the remediation of this barrier is both technically feasible and readily achievable.

**Restrooms**

h. Restrooms within Pic-A-Lilli are inaccessible to Mr. Maurer. The barriers to access include incorrect signage, inaccessible water closets which lack the proper controls, and a lack of wheelchair maneuvering space; violations of the ADAAG and Section 601 of the 2010 ADA Standards.

i. Restrooms within Pic-A-Lilli contain dispensers which are improperly mounted beyond Mr. Maurer's reach – a violation of the ADAAG and Section 308 of the 2010 Standards. Due to their improper locations Mr. Maurer could not make use of the dispensers within the restrooms. The remediation of these barriers is both technically feasible and readily achievable.

j. Restrooms within Pic-A-Lilli contain improper centerlines for the water closets and flush controls which are mounted on the wall side, in violation of the ADAAG and Section 604 of the 2010 ADA Standards. Due to these barriers Mr. Maurer could not make use of the water closets without assistance. The remediation of these barriers is both technically

feasible and readily achievable.

k. Restrooms within Pic-A-Lilli contain lavatories that lack the requisite knee and toe clearance; in violation of the ADAAG and Section 606 of the 2010 ADA Standards. Due to their inaccessibility Mr. Maurer could not wash his hands nor make use of the sinks. The remediation of these barriers is both technically feasible and readily achievable.

l. The doors used to access the restrooms within Pic-A-Lilli are impeded by improper signage, a lack of latch-side clearance, and improper door hardware. Due to the lack of access Mr. Maurer could not enter/exit the restrooms without assistance. The remediation of these barriers is both technically feasible and readily achievable.

27. Each of the foregoing violations is also a violation of the ADA Standards for Accessible Design, originally published on July 26, 1991 and republished as Appendix D to 28 CFR part 36 ("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter 2, and Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified at 36 CFR § 1191, appendix B and D ("ADAAG"); and the 2010 Standards for Accessible Design ("2010 ADA Standards"), as promulgated by the U.S. Department of Justice.[5]

28. The discriminatory violations described in paragraph 26 may not be an exhaustive list of the ADA violations that exist at Pic-A-Lilli, but they are the result of a preliminary inspection conducted by the Plaintiff's Expert and include those personally experienced by Mr. Maurer. Plaintiff requires thorough inspection of the Defendant's place of public accommodation in order to photograph and measure the architectural barriers which exist at the Property in violation of the

---

[5] 28 CFR § 36.104

ADA/LAD.

29. Plaintiff, and other similarly situated mobility impaired persons, will continue to suffer discrimination, injury and damage without the immediate relief provided for by the ADA and requested herein.

30. Defendant has discriminated against Plaintiff, and other similarly situated mobility impaired persons, by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of the ADA.

31. Defendant continues to discriminate against Plaintiff, and other similarly situated mobility impaired persons, by failing to remove architectural barriers, and communication barriers that are structural in nature.[6]

32. Defendant continues to discriminate against Plaintiff, and other similarly situated mobility impaired persons, by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.[7]

33. Defendant continues to discriminate against Plaintiff, and other similarly situated mobility impaired persons, by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.[8]

34. If the Defendant's facility is one which was designed and constructed for first occupancy

---

[6] 42 U.S.C. § 12181(b)(2)(A)(iv)
[7] 42 U.S.C. § 12181(b)(2)(A)(ii)
[8] 42 U.S.C. § 12181(b)(2)(A)(iii)

subsequent to January 26, 1993[9] then the Defendant's facility must be readily accessible to and useable by individuals with disabilities in accordance with the 1991 Standards.

35. Pursuant to 28 CFR § 36.402(a)(1) "any alteration" made to the Property after January 26, 1992, must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Property are readily accessible to and usable by individuals with disabilities, including individuals, like Mr. Maurer, who use wheelchairs. An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[10] Discovery in this matter will reveal if and when such alterations have taken place at the Property, and to what corresponding technical and scoping specification the Defendant must meet/exceed to bring the Property into compliance with the ADA.

36. Pursuant to 28 CFR § 36.304(a) Defendant shall remove all existing architectural barriers, including communication barriers that are structural in nature, where such removal is readily achievable.

37. 28 C.F.R. § 36.304(d)(2)(i) controls with respect to the corresponding technical and scoping specification to which each element - that has not been altered - must comply with or be modified to meet. Those are defined as follows:

   a. Elements that have not been altered since on or after March 15, 2012, must comply with the 1991 Standards.

   b. Elements that have existed prior to and have not been altered since on or after March 15, 2012, that do not comply with the 1991 Standards must be modified to comply with either

---

[9] as defined by 28 CFR § 36.401(a)(2)
[10] 28 CFR § 36.402(a)(2)

11

the 1991 Standards or the 2010 Standards.

   c. Elements that have been altered on or after March 15, 2012, that do not comply with the 1991 Standards must be modified to comply with the 2010 Standards.

38. Plaintiff is not required to notify Defendant of their violation of the ADA nor their ongoing discrimination prior to the filing of this action. To that end, Plaintiff has found that voicing concerns to employees and management, making phone calls, and writing letters is futile. In his experience the only way to spur action and achieve the accessibility required under the law is to file matters, like this one, and pray for the relief contained herein.

39. Plaintiff is without adequate remedy at law and is suffering irreparable harm, including bodily injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiff and the Defendant, a remedy in equity is warranted. The public interest would not be disserved by the issuance of a permanent injunction.

40. Pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, Plaintiff are entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendant.

41. Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the Property and make such readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the Property until such time as the Defendant cure their violations of the ADA.[11]

**WHEREFORE,** Plaintiff respectfully demands;

   a. The Court issue a Declaratory Judgment determining that the Defendant is in violation of

---

[11] 42 U.S.C. § 12188(b)(2)

Title III of the ADA.

b. Injunctive relief against the Defendant including an order to (1) cure all ADA violations existing at the Property listed herein and those later found through discovery within the next six months; (2) to make the Property accessible to and usable by individuals with disabilities; and (3) to require the Defendant to make reasonable modifications in policies, practices or procedures, to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c. An Order requiring the Defendant to cease its discriminatory practices and to maintain the requisite accessible features at the Property - as required by the ADA.

d. An award of attorney's fees, costs, and litigation expenses pursuant to 42 U.S.C. § 12205.

e. Such other relief as the Court deems just and proper and is allowable under Title III of the ADA.

## COUNT II
### Violation of New Jersey Law
### Against Discrimination, N.J.S.A. 10:5-1 et seq.

42. Plaintiff realleges and incorporates, by reference, all of the allegations contained in all of the preceding paragraphs.

43. The Property is a place of public accommodation as defined by N.J.S.A 10:5-5.

44. New Jersey law provides that all persons shall have the opportunity to obtain all the accommodations, advantages, facilities, and privileges of any public place of accommodation without discrimination on the basis of disability. This opportunity is recognized and declared to

be a civil right.[12]

45. As set forth above, the Defendant has violated the LAD by denying Mr. Maurer, and all other mobility impaired individuals, the full and equal enjoyment of the goods, facilities, services, and accommodations available at the Property.

46. As a result of the aforementioned discrimination through repeated exposure to architectural barriers and other harmful conditions, Mr. Maurer has sustained bodily injury in the form of emotional distress, mental anguish, suffering and humiliation, in violation of the LAD.

**WHEREFORE**, Plaintiff respectfully demands;

a. That this Court assume jurisdiction.

b. The Court issue a Declaratory Judgment determining that the Defendants are in violation of the LAD.

c. An injunction ordering Defendant to immediately comply with the LAD by removing all architectural barriers listed herein or later found through discovery.

d. A monetary award consisting of the individual Plaintiff's damages – to the maximum extent permitted – attorney's fees, and litigation expenses; including expert's fees and costs.

e. An order requiring the Defendant to cease its discriminatory practices and to maintain the requisite accessible features at the Property - as required by the LAD.

f. Other relief that this Court deems just and proper and is allowable under the LAD.

Respectfully submitted on this 11th day of June 2023,

/s/ *Jon G. Shadinger Jr.*
Jon G. Shadinger Jr., Esq.
Shadinger Law, LLC

---

[12] Pursuant to N.J.S.A 10:5-4

717 E. Elmer Street, Suite 7  
Vineland, NJ 08360  
Direct (609) 319-5399  
Office (609) 236-3211  
Fax (609) 900-2760  
js@shadingerlaw.com  
*Attorney for Plaintiff*